UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRANDON A. WILLIAMS,

        Plaintiff,

v.                                  Civil Action No. 2:22cv388

SERGEANT M. MITCHELL, et al,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss filed by Defendant John McClanahan ("McClanahan"), ECF No. 49, and a motion to dismiss collectively filed by Defendants Sergeant M. Mitchell, Officer Steven Stone, and Officer Rodney VanFaussien ("Mitchell," "Stone," and "VanFaussien"), ECF No. 54.[1] Because the facts and legal questions are adequately presented in the motions and subsequent briefs, and oral argument would not aid in the decisional process, the Court finds that a hearing is unnecessary. For the reasons explained herein, the Court **GRANTS** the respective motions to dismiss the Second Amended Complaint as to Counts I-V, and **DISMISSES without prejudice** Counts VI and VII.

---

[1] When referring to Defendants McClanahan, Mitchell, Stone, and VanFaussien collectively, the Court will refer to the group as "Defendants."

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the Second Amended Complaint, in early 2020, Plaintiff was arrested by McClanahan on a misdemeanor trespassing charge – an interaction that Plaintiff recorded. Second Am. Compl. ¶¶ 5-6, ECF No. 48.    Following a trial, at which McClanahan testified, Plaintiff was convicted.    Id. ¶ 6.    On appeal to the Circuit Court, Plaintiff's recording purportedly demonstrated that McClanahan testified falsely in court, and as a result, the charges against Plaintiff were dismissed on September 15, 2020.  Id. ¶¶ 6-7.

Not long after, on September 30, 2020, Plaintiff was seriously injured in a car accident caused by a third party, Rex Aman ("Aman"), who was allegedly intoxicated and driving recklessly at excessive speeds.    Id. ¶¶ 9-10.[2]    A number of officers responded to the scene of the crash, to include McClanahan, Sergeant Mitchell, Officer Stone, and Officer VanFaussien.    Plaintiff alleges that VanFaussien recognized Plaintiff and identified him to the other officers as "the guy that gave McClanahan a ration of shit," in reference to the initial trespassing suit.    Id. ¶ 15. Thereafter,    Plaintiff    alleges    that    Defendants    "made misrepresentations on the accident report, which falsely reported

---

[2] Plaintiff alleges that eyewitnesses spoke with the responding officers at the scene of the crash and confirmed that Aman was traveling "in excess of 75 miles an hour."  Second Am. Compl. ¶ 11.  Plaintiff further alleges that "Aman's blood alcohol level was .30 at the time of the accident."  Id. ¶ 12.

2

that Aman was driving the speed limit, had not been drinking, and that his car had suffered a steering defect." Id. ¶ 17.

As a result of these misrepresentations, Plaintiff filed a complaint in this Court asserting seven causes of action against Mitchell, Stone, and McClanahan – five pursuant to 42 U.S.C. § 1983 and two pursuant to Virginia state law.[3] ECF No. 1. Shortly thereafter, Plaintiff filed an Amended Complaint. ECF No. 2. On January 30, 2023, Defendants Mitchell and Stone collectively filed a motion to dismiss the Amended Complaint, ECF No. 33, while Defendant McClanahan filed a separate motion to dismiss, ECF No. 35. Plaintiff filed briefs in opposition, ECF No. 38, 39, and Defendants filed reply briefs, ECF No. 40, 41.

Before the Court's consideration of the motions, Plaintiff filed an unopposed Motion to Amend his Complaint and was permitted to file a Second Amended Complaint on March 15, 2023, adding Officer Rodney VanFaussien as a defendant. ECF No. 48. That same day, McClanahan filed a motion to dismiss Plaintiff's Second Amended Complaint relying on "his previously filed brief[s] in support of his [original] motion to dismiss." ECF No. 49. Not long after, on March 28, 2023, Defendants Mitchell, Stone, and VanFaussien collectively filed their motion to dismiss the Second Amended

---

[3] The parties agree that a final claim against the City of Norfolk was dismissed without prejudice following a Rule 41 stipulation of dismissal filed on February 8, 2023. ECF No. 37.

Complaint.   ECF No. 54.   Plaintiff filed briefs in opposition, incorporating his earlier filings, ECF No. 53, 57, and Mitchell, Stone, and VanFaussien collectively filed a reply on April 7, 2023, ECF No. 58.  Accordingly, this matter is ripe for consideration.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a cause of action based on the plaintiff's failure to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).   A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Fair notice is provided by setting forth enough facts to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570 (2007)).   The "plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556). Moreover, neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice to meet the plausibility requirement. Id. (citing Twombly, 550 U.S. at 555).

Because a motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

### III.   DISCUSSION

Defendants McClanahan, Mitchell, Stone, and VanFaussien all contend that, with respect to each of Plaintiff's asserted causes of action, Plaintiff has failed to plead sufficient facts to state a claim upon which relief can be granted. The Court will therefore

5

consider, in turn, the sufficiency of Plaintiff's allegations with respect to each of Plaintiff's seven asserted causes of action.

### A. Count I – Denial of Due Process & Equal Protection against McClanahan

Plaintiff's first cause of action alleges that McClanahan denied him due process and equal protection by testifying falsely "under oath in court in an attempt to obtain a conviction" on the underlying misdemeanor trespassing charge. ECF No. 48 ¶ 22. In his motion, McClanahan contends that the Court should dismiss Plaintiff's first claim because law enforcement "enjoy absolute immunity for their criminal trial testimony and the Civil Rights Act of 1871 does not authorize a damages claim against a police officer for giving perjured testimony at a criminal trial." ECF No. 36, at 3 (citing Briscoe v. Lahue, 460 U.S. 325, 345 (1983)). In his response, Plaintiff "does not contest" McClanahan's assertion of absolute immunity. ECF No. 39, at 4. Therefore, given the applicability of Briscoe, and in light of Plaintiff's concession that common-law immunity applies, the Court **GRANTS** McClanahan's motion to dismiss Count I.

### B. Count II – Retaliation

Plaintiff's second cause of action alleges that Defendants "intentionally retaliated against [Plaintiff] for the exercise" of both: (1) his Sixth Amendment rights to trial and the confrontation of witnesses; and (2) his First Amendment right to record his

6

interaction with police and use that evidence to assert that McClanahan testified falsely during the trespassing trial. ECF No. 48 ¶¶ 31-33. Plaintiff contends that, "by misrepresenting facts on the accident report," Defendants sought to deprive Plaintiff "of his property right to bring a claim for the injuries from the accident." Id. ¶¶ 33-34.

While retaliation is not specifically referenced in the United States Constitution, "[r]etaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 . . . because retaliatory actions may tend to chill individuals' exercise of constitutional rights." ACLU of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993). To prevail on a § 1983 retaliation claim, an individual must establish: "(1) a specific constitutional right; (2) the defendant's intent to retaliate against him for exercising that right; (3) a retaliatory adverse act; and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).

As it relates to the third element, a court must "distinguish material from immaterial adverse actions." Houston Community College v. Wilson, 142 S.Ct. 1253, 1261 (2022). Prior to the Supreme Court's ruling in Houston Community College, the Fourth Circuit recognized the need to distinguish material adverse acts from immaterial adverse acts in ACLU of Md., when it explained that in order to show a retaliatory adverse act (i.e., satisfy the third

element), a plaintiff "must demonstrate, inter alia, that [he] suffered some adversity in response to h[is] exercise of protected rights." ACLU of Md., 999 F.2d at 785. In other words, a plaintiff must show that he "suffered [] more than a de minimis inconvenience" as a result of the retaliatory action. ACLU of Md., 999 F.2d at 785, n.6. Accordingly, the Fourth Circuit found that "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." Id. at 785. Today, the Fourth Circuit also measures materiality, at least in the First Amendment context, by way of an "objective standard" asking whether the retaliatory conduct "would likely deter 'a person of ordinary firmness' from the exercise of" their constitutional rights. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005) (citations omitted).

As it pertains to the fourth element, the Fourth Circuit has also explained that in order to prove causation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." McFadden v. Lewis, 517 Fed. App'x. 149 (4th Cir. 2013) (quoting Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)).

### 1. Retaliation under the Sixth Amendment

As explained above, Plaintiff's second cause of action alleges, in part, that Defendants retaliated against him after he

exercised his Sixth Amendment rights to trial and to confront witnesses on his misdemeanor trespassing charge from early 2020. Specifically, Plaintiff contends that Defendants intentionally falsified the car accident report from September 2020 because he "insist[ed] on a trial of the trespassing charge and [] challeng[ed] the testimony of McClanahan." ECF No. 48 ¶ 32. In their opposition briefs, Defendants argue that Plaintiff's retaliation claim should be dismissed because he fails to allege that the purported retaliation resulted in any "meaningful adversity." ECF No. 36, at 4; ECF No. 55, at 15. The Court understands Defendant's "meaningful adversity" argument to mean that any adverse act Plaintiff alleged in the Second Amended Complaint was not material, as required by the Supreme Court. For the reasons stated below, the Court agrees with Defendants that Plaintiff's Second Amended Complaint fails to allege facts suggesting that there was a material adverse act as a result of Plaintiff exercising his Sixth Amendment rights to trial and to confront witnesses.

As stated earlier, when analyzing § 1983 retaliation claims, courts must "distinguish material from immaterial adverse actions." Houston Community College, 142 S.Ct. at 1261. Whereas some adverse actions are easily identifiable as material – such as a retaliatory arrest, prosecution, or dismissal from employment – other "less harsh" actions only sometimes "give rise to an actionable"

retaliation claim. Id. Here, although the Court certainly does not condone Defendants' alleged retaliatory conduct, Plaintiff's allegations fall short of what is required to prove a material adverse act.[4]   Notably, while the alleged retaliatory adverse action of falsifying the accident report may have been distressing, the Court finds that such conduct would not chill an accused individual's future exercise of their right to a criminal trial or to confront an adverse witness. See Nieves v. Bartlett, 139 S.Ct. 1715 (2019) (finding that the test is a forward-looking inquiry as to whether a person would be deterred from exercising such constitutional rights in the future).

Indeed, here, Plaintiff has not alleged that the exercise of his rights has been chilled by the adverse act, or that he was adversely impacted by Defendants' alleged false accident report. Most notably, Sixth Amendment rights are generally implicated in criminal proceedings, and, here, Plaintiff's exercise of his constitutional rights resulted in the dismissal of his state criminal charges. ECF No. 48 ¶ 7; see Austin v. United States, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"). While Plaintiff alleges that Defendants' retaliatory conduct of

---

[4] To be clear, Plaintiff's Second Amended Complaint, taken as true, alleges conduct of which this Court greatly disapproves. Defendants' alleged retaliatory actions, if true, are not becoming of this nation's law enforcement officers, who are tasked with promoting public safety and ensuring justice for all and who are expected to act with integrity.

falsifying a car accident report in a civil dispute caused him physical and emotional injuries, ECF No. 48 ¶ 35, Plaintiff's allegations do not support the conclusion that such retaliatory conduct would also chill the future efforts of a person defending themselves against a criminal charge because the stakes of a criminal suit, which implicates a defendant's liberty interest, typically significantly outweigh the stakes of civil litigation. In other words, it is not the Court's view that a reasonable person, including Plaintiff, who learned of the successful dismissal of Plaintiff's criminal charges as a result of the exercise of his Sixth Amendment rights would be deterred from the exercise of their Sixth Amendment Rights, i.e., chilled by the alleged retaliatory falsification of an inadmissible accident report.

Even assuming that a fear of a false statement in a civil case would prevent a person from asserting a defense in their criminal case, here, "there [was] no impairment of the plaintiff's rights," ACLU of Md., 999 F.2d at 785, since Virginia law expressly prohibits the use of police accident reports in any trial, civil or criminal.[5] In pertinent part, Va. Code Ann. § 46.2-379 provides that: "[a]ll crash reports made by investigating officers shall be for the confidential use of the Department and of other state agencies for

_____

[5] The Court notes that Plaintiff has filed a personal injury suit against the driver of the other vehicle in Virginia state court.  Case No. CL22-2742.

accident prevention purposes and shall not be used as evidence in any trial, civil or criminal, arising out of any accident." Va. Code Ann. § 46.2-379. Thus, because the alleged falsified report would be unavailable to the plaintiff or any <u>defendant</u> to use as evidence in any subsequent <u>civil</u> proceeding, Plaintiff fails to allege facts to support the finding that such falsified report would chill one's desire to zealously defend against legitimate or illegitimate <u>criminal</u> charges.

To be clear, the Court acknowledges that false police reports can have harmful implications, especially where such falsified reports result in, for example, new <u>criminal</u> charges or unjustified detainment. Plaintiff, however, offers no allegations sufficient to prove that he has "suffered [a] cognizable 'adverse' effect from these acts." <u>See</u> <u>Buckheit v. Dennis</u>, No. C 09-5000, 2012 WL 1166077, at *22 (N.D. Cal. Apr. 6, 2012), aff'd, 573 Fed. App'x 662 (9th Cir. 2014) (dismissing a plaintiff's First Amendment § 1983 retaliation claim because the plaintiff failed to prove that the "retaliatory acts had any adverse effect on him or would have had a chilling effect on his speech"). It bears repeating that a plaintiff alleging a § 1983 retaliation claim, "must demonstrate, inter alia, that [he] suffered some adversity in response to h[is] exercise of protected rights." <u>ACLU of Md.</u>, 999 F.2d at 785. As written, Plaintiff's Second Amended Complaint does not support the conclusion that Plaintiff suffered "more than a <u>de minimis</u>

inconvenience" as a result of Defendants' alleged retaliatory conduct. Id. at 785, n.6. Moreover, plaintiff has not provided, and the Court has not independently found, a decision where the falsification of a police report amounted to "a civil rights violation in the absence of some evidence that the plaintiff was actually harmed in some way by those reports." Bush v. City of Philadelphia, No. Civ. A. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 16, 1999); see Landrigan v. City of Warwick, 628 F.2d 736, 744-45 (1st Cir.1980) (finding that mere existence of false police report does not state a cognizable constitutional injury); Shaaban v. Twp. of Dover, No. cv 03-623, 2005 WL 8176144, at *6 (D.N.J. Mar. 21, 2005) (holding that even if the falsification of a police report intended to harm the plaintiff in some manner, "there [was] no demonstration that [the plaintiff was] in fact deprived of any life, liberty, or property as a result."); Bell v. Johnson, No. 7:09cv214, 2011 WL 1226003 (W.D. Va. Mar. 30, 2011) (finding that the "mere allegations that deputies colluded to misrepresent their prior (mis)conduct" by falsifying police reports does not necessarily give rise to a constitutional deprivation); Green v. New Jersey State Police, 2006 WL 2289528, at *4 (D.N.J. Aug. 9, 2006) (unpublished) (holding that while the falsification of a police report may "constitute improper police conduct, the mere fact that the officers may have escaped discipline does not injure"

13

a plaintiff's constitutional rights).  Accordingly, Plaintiff's Sixth Amendment argument fails.

### 2. Retaliation under the First Amendment

Plaintiff also alleges as a basis for his second cause of action that Defendants retaliated against him for exercising his First Amendment right to "record[] McClanahan during his arrest on the trespassing charge" and to use such recording to "point[] out that McClanahan had lied" on the stand.  ECF No. ¶ 31.  With regard to this assertion, Defendants similarly argue that because Plaintiff fails to allege facts that show "meaningful adversity," the claim should be dismissed.  ECF No. 36, at 4; ECF No. 55, at 15.

As it pertains to § 1983 retaliation claims under the First Amendment, a well-established body of caselaw describes the test in a slightly different manner from the test used to analyze retaliation claims that arise under other constitutional amendments.  Such caselaw specifies that an individual asserting a First Amendment retaliation claim must allege the following elements: "(1) []he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected h[is] First Amendment rights, and (3) there was a causal relationship between h[is] protected activity and the defendants' conduct."  Constantine, 411 F.3d at 499 (citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)).  Consistent with recent Supreme

14

Court caselaw requiring a material adverse act, Houston Community College, 142 S.Ct. at 1261, earlier Fourth Circuit caselaw explains that because "[n]ot all retaliatory conduct tends to chill First Amendment activity [,] . . . a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a 'de minimis inconvenience' to h[is] exercise of First Amendment rights." Id. at 500 (citing DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995); ACLU of Md., 999 F.2d at 786 n.6). Thus, "for purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Id. (citations omitted).

As to the first element, it is undisputed that Plaintiff engaged in "protected activity" when he recorded his initial interaction with McClanahan (his arrest for the trespassing offense). The United States Supreme Court has recognized that "[c]reating and disseminating information is protected speech under the First Amendment." Sharpe v. Winterville Police Dep't, 59 F. 4th 674, 681 (4th Cir. 2023) (citing Sorrell v. IMS Health Inc., 564 U.S. 552, 570 (2011)). Following this ruling, federal courts "have routinely recognized [that] these principles extend the First Amendment to cover recording - particularly when the information involves matters of public interest like police encounters." Id.

15

As to the second element, it appears that this Court's analysis of Plaintiff's First Amendment retaliation claim hinges on whether Defendants took any action that adversely affected Plaintiff's First Amendment rights. On this element, Plaintiff alleges that in response to Plaintiff's exercise of his First Amendment rights, "Defendants intentionally retaliated against [him] . . . by misrepresenting facts on the accident report." ECF No. 48 ¶ 33. As a result, Plaintiff contends that Defendants' conduct had multiple adverse effects to include inhibiting his pursuit of a personal injury claim against Aman and other "severe emotional injuries." ECF No. 57, at 5.

After careful review, the Court finds that Defendants' alleged conduct does not rise to a level that would deter "a person of ordinary firmness" from exercising their First Amendment rights. Constantine, 411 F.3d at 499. Similar to the Court's analysis of Plaintiff's Sixth Amendment arguments above, it is unlikely that Defendants' alleged conduct of falsifying a police document that is inadmissible in civil suits and criminal cases would chill or deter a person from recording interactions with law enforcement in order to prevent police misconduct, protect their civil liberties, or defend themselves in a criminal investigation or trial. Although the Court acknowledges that such retaliatory conduct may be concerning for any person considering exercising their First Amendment rights in these forms, as alleged here, the Court is

16

unable to conclude that Plaintiff has pled facts showing that it would chill a person's future exercise of such rights where the plaintiff was not materially impacted by the retaliatory conduct of creating an inadmissible false accident report.

Accordingly, having found that Plaintiff's Second Amended Complaint fails to state a retaliation claim under either the First or Sixth Amendment, the Court therefore **GRANTS** Defendants' motions to dismiss Count II.[6]

### C. Count III – Denial of Due Process in Violation of the Fifth and Fourteenth Amendments

Plaintiff's third cause of action alleges that the Defendants denied him due process under the Fifth and Fourteenth Amendments of the United States Constitution "by intentionally misrepresenting

---

[6] While it is not clear from Plaintiff's brief, to the extent Plaintiff alleges that Defendants' retaliatory conduct prevented him from exercising his constitutional right to access the courts rather than chilling the future exercise of his First and Sixth Amendment rights, the Court's conclusion remains the same. Christopher v. Harbury, 536 U.S. 403, 415 (2002). First, the test requires the Court to analyze whether Defendants' alleged conduct deterred Plaintiff from exercising his right to record law enforcement officers or his right to confront a witness, not whether it inhibited him from pursuing a subsequent civil action against the at-fault driver. Second, even if this Court were to analyze the latter question, there is not a sufficient allegation of obstruction of court access to deter "a person of ordinary firmness" because accident reports are inadmissible in Virginia. Constantine, 411 F.3d at 499; Va. Code Ann. § 46.2-379. Moreover, as previously mentioned, Plaintiff filed a personal injury suit against the driver of the other vehicle in Virginia state court. Case No. CL22-2742. See Harmon v. St. Louis County, 4:08-cv-226, 2009 WL 880024, at *3 (E.D.Mo. Mar. 30, 2009) (dismissing a plaintiff's claim that a police officer falsified an accident report to deprive him of a personal injury claim); see also Graham v. City of Albany, No. 1:08-cv-892, 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009) (finding that a plaintiff failed to explain how the defendants' actions impeded her efforts to pursue a civil claim in state court); Hassuneh v. City of Minneapolis, 560 F.Supp.2d 764, 769 (D.Minn.2008) (finding no merit to a plaintiffs' right to access the courts claim because the plaintiff brought a claim against the third party, despite "falsified" police report.).

the facts of the accident in their report." ECF No. 48 ¶ 38. Plaintiff further contends that the Defendants' intention was to deprive him "of his property right to bring a claim for the injuries from the accident by minimizing the accident and deflect[ing] blame from Aman." Id. ¶ 39. Defendants, in their respective motions, argue that the Court should dismiss Plaintiff's third claim because Plaintiff fails to "identify a liberty interest that he was deprived of." ECF No. 35, at 4; see ECF No. 55, at 9.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. In order to state a procedural due process claim, Plaintiff must: "(1) identify a protected liberty or a property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "Where a plaintiff fails to identify a protectable liberty or property interest that is placed in jeopardy by a defendant's actions, he fails to establish that he is owed any level of procedural protection." Montgomery v. Medie, 535 F. Supp. 3d 522, 526 (E.D. Va. Apr. 26, 2021) (quoting Williams v. Nesterick, No. 1:19cv1605, 2021 WL 415133, at *2 (E.D. Va. Feb. 5, 2021)).

As it relates to the first element, Plaintiff cites caselaw in support of the proposition that there exists a right "not to be deprived of liberty as a result of the fabrication of evidence by

a government officer acting in an investigating capacity." Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000)); see ECF No. 39, at 5. Although a review of Washington confirms the Fourth Circuit's acknowledgment of such right, a close reading reveals that the right does not apply outside of criminal prosecutions. Notably, in Washington, the Fourth Circuit found that where an officer fabricated evidence which resulted in the defendant's conviction and subsequent incarceration, a constitutional violation occurred. Washington, 407 F.3d at 282-283. Accordingly, as explained by the Second Circuit in Zahrey, the right is better read as "the right not to be deprived of liberty as a result of any governmental misconduct occurring in the investigative phase of a criminal matter." 221 F.3d at 349. Unlike in Washington, here, Defendants' alleged falsification of the accident report did not occur during the investigation of a criminal offense, did not result in criminal charges or a criminal conviction, and did not even thwart Plaintiff's pursuit of a personal injury claim against the at-fault driver. Without such factors, the Court is not persuaded by Plaintiff's argument that Washington signals a constitutional deprivation that is also present in this case.[7]

---

[7] Following the Fourth Circuit's ruling in Washington, the Fourth Circuit later clarified that "[f]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and

Additional caselaw cited by Plaintiff in his opposition brief does not alter this Court's analysis. In fact, such caselaw bolsters the Court's finding that Plaintiff has not alleged a constitutional violation. Notably, Plaintiff asserts that, like Washington, the Eighth Circuit decision in Shock v. Tester, 405 F.2d 852 (8th Cir. 1969) "suggests that a Constitutional violation is present in this case." ECF No. 57, at 4. The Court disagrees. In Shock, the Court concluded that the plaintiff's "conclusionary allegations of the denial of due process [were] entirely unsupported by allegations of fact tending to show how or whether he was deprived of life, liberty and property by the actions of the State Highway Patrolmen." Shock, 405 F.2d at 855. The Eighth Circuit went on to note that "such deprivation [also] can not be assumed as under the Arkansas law, an accident report can not be used as evidence in a criminal or civil proceeding." Id. Therefore, in actuality, Shock closely resembles this case in that Plaintiff's allegations fail to support the deprivation of an established constitutional right, especially in jurisdictions, like Virginia, where an accident report is not even admissible in a personal injury civil action or criminal matter.[8]

---

subsequent incarceration—resulted from the fabrication." Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014).

[8] Plaintiff also attempts to rely on Shock's analysis and dismissal of the plaintiff's equal protection claim to assert that there is a constitutional right present in this case. See ECF No. 39, at 5; ECF No. 57, at 4 (arguing that Plaintiff "has made the exact kind of allegations that were missing in Shock" [express discrimination]). However, such analysis is inapposite to

Following the Eighth Circuit's decision in Shock, "[a] number of courts have held that there is no constitutional right to an accurate police report." A.J. ex rel. Dixon v. Tanksley, 94 F. Supp. 3d 1061, 1071 (D. Mass 2015) (citation omitted); Landrigan v. Warwick, 628 F.2d 736, 744 (1st Cir. 1980); Lawrence v. City of St. Paul, 740 F. Supp. 2d 1026, 1038–39 (D. Minn. 2010) ("[E]ven if police defendants knowingly inserted false information in their reports, [plaintiff] was not deprived of a constitutionally protected interest because of that false information, and thus she was not deprived of substantive due process."); Jarrett v. Twp. of Bensalem, No. CIV.A. 07-1480, 2008 WL 818615, at *3 (E.D. Pa. Mar. 26, 2008) ("The filing of a false police report is not itself a constitutional violation, even when the report is the result of an intentional conspiracy among police officers to cover up police misconduct."); Bailey v. Tricolla, No. CV-94-4597, 1995 WL 548714 (E.D.N.Y. Sept. 12, 1995) ("The mere filing of false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983."). Accordingly, Plaintiff's due process allegations fail to state a valid claim for relief because (1) Plaintiff has failed to identify a protected liberty interest that would trigger the application of due process

---

Plaintiff's due process claim which fails because of the absence of a constitutional violation, not because of Plaintiff's failure to allege intentional or purposeful discrimination.

procedures and (2) Plaintiff "has not been denied actual access" to court "by the mere existence of the subject [accident] report." Harmon v. St. Louis Cnty., No. 4:08cv226, 2009 WL 880024, at *4 (E.D. Mo. Mar. 30, 2009).  While "[t]here are many unfortunate things that can happen to innocent people in this world as a result of improper conduct by state officials . . . [n]ot all of these unfortunate things [] result in the denial of one's Constitutional rights," and this "case serves as a perfect example."  Bush, No. Civ. A. 98-0994, 1999 WL 554585, at *1.  Defendants' motions to dismiss Count III are therefore **GRANTED**.

### D. Count IV – Denial of Equal Protection

Plaintiff's fourth cause of action asserts that the Defendants denied him equal protection in violation of the Fourteenth Amendment.  Specifically, Plaintiff contends that the Defendants "treated [him] differently from others similarly situated intentionally and without a rational basis by intentionally mispresenting the facts on the accident report."  ECF No. 1 ¶ 42. In opposition, Defendant McClanahan argues that Plaintiff's equal protection claim must be dismissed because he "does not allege facts showing that McClanahan discriminated against [him] and treated him differently than others similarly situated."  No. 35, at 5.  Defendants Stone, Mitchell, and VanFaussien make an identical argument in their opposition brief, adding that

22

Plaintiff's "instant submission is too vague and general to support an equal protection claim."  ECF No. 55, at 7.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  In other words, "[t]he purpose of the equal protection clause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Willis v. Town Of Marshall, N.C., 426 F.3d 251, 263 (4th Cir. 2005) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  Thus, "[i]n order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus."  Equity in Ath., Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011); see also King v. Rubenstein, 825 F.3d 206, 220 (4th Cir. 2016) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.") (citations omitted).

Here, even after construing Plaintiff's facts in the light most favorable to him, Plaintiff fails to state a plausible equal protection claim against Defendants. As discussed above, the Second Amended Complaint alleges that Defendants denied Plaintiff equal protection by treating him "differently from others similarly situated . . . by intentionally misrepresenting the facts on the accident report." ECF No. 1 ¶ 42. Such conclusory allegation is insufficient to allege an equal protection claim because Plaintiff has failed to identify any similarly situated comparators. To the extent that Plaintiff argues that he is not required to identify a similarly situated person at this stage of the case under Iqbal, this Court is unpersuaded. See Plaintiff's Opposition Brief, ECF No. 57, at 5 ("[A]t this stage of the case, [Plaintiff] must only state a "plausible" claim, Iqbal, 556 U.S. 662 at 679, and this Court should draw all reasonable inferences in favor of [Plaintiff].").

Plaintiff's equal protection claim does not allege discrimination based on race, gender, or another recognized "class," and therefore can only be interpreted as alleging that the discrimination was against a "class-of-one". Willis v. Town Of Marshall, N.C., 426 F.3d 251, 263 (4th Cir. 2005) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Following the Supreme Court's decision in Iqbal, multiple circuits have found that "generalized pleading [] is no longer sufficient

to state a class-of-one claim." Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1219 (10th Cir. 2011); see Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010); Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). Despite some disagreement on the specific requirements under the Iqbal pleading standard, "[t]he Fourth Circuit has not had occasion to provide a clear standard as to how concretely and specifically a plaintiff must compare himself to others to state a class-of-one claim." Foster v. United States Env't Prot. Agency, No. 2:14cv16744, 2016 WL 4473453, at *8 (S.D.W. Va. Aug. 22, 2016). Nevertheless, the majority of circuits have found that Iqbal, "which require[s] that a complaint allege facts sufficient to establish a plausible claim for relief," supersedes the prior pleading standard that a class-of-one claim "is adequately pled [] even without specification of others similarly situated." Ruston, 610 F.3d at 59 (cleaned up); see also Kansas Penn Gaming, LLC, 656 F.3d at 1219 (finding that after Iqbal, "it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions") (emphasis added); Leib v. Hillsborough County Pub. Transp. Comm'n, 558 F.3d 1301, 1307 (11th Cir. 2009) (affirming dismissal upon flat assertion that plaintiff was treated differently from others similarly situated, and noting that "plaintiffs are not permitted simply to 'rely on broad generalities in identifying a comparator'") (internal citations omitted).

Therefore, because Plaintiff's Complaint "merely parrot[s] the statutory language of the claim[]" that he is pleading, and because Plaintiff fails to "provide specific facts to plead these legal claims," either directly or on the basis of circumstantial evidence or reasonable inferences, Plaintiff has not satisfied the pleading standard under Rule 8 of the Federal Rules of Civil Procedure. Brooks, 578 F.3d at 581.

Equally detrimental to Plaintiff's fourth cause of action is the apparent absence of a legal right or constitutional right of which Plaintiff was allegedly denied equal protection.   Stated differently, Plaintiff's Second Amended Complaint merely alleges that Plaintiff "was treated differently from others similarly situated intentionally and without a rational basis," ECF No. 48 ¶ 42, without identifying under which law Plaintiff did not receive equal treatment.   As this Court previously noted, well-established caselaw confirms that there is no recognized right to an accurate police report.   Furthermore, to the extent that Plaintiff argues that the false report constitutionally denied him a property right to recover money through a personal injury action, "possible recovery of money damages in a civil action is not a property interest protected by the Fourteenth Amendment." A.J. ex rel. Dixon, 94 F. Supp. 3d at 1072 (citing Graham v. City of Albany, No. 1:08cv892, 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009)).

Accordingly, Defendants' motions to dismiss Plaintiff's fourth cause of action are **GRANTED**.

### E. Count V – Conspiracy

Plaintiff's fifth cause of action alleges that the Defendants conspired "jointly and in concert in falsifying the accident report in order to deprive him of his constitutional rights." ECF No. 48 ¶ 45. McClanahan, in his motion, argues that Plaintiff's conspiracy claim must be dismissed since "the amended complaint does not state facts which show [Plaintiff's] constitutional rights were violated, nor does it state facts showing an agreement by McClanahan with other defendants." ECF No. 35, at 5. Moreover, the remaining Defendants contend that dismissal of Plaintiff's conspiracy claim is warranted since Plaintiff's Second Amended Complaint is "vague and conclusory without any meaningful explanation of what agreement was reached." ECF No. 55, at 15.

To state a claim for civil conspiracy under Section 1983, a plaintiff bears the "weighty burden" of showing that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Barrett v. Pae Gov't Servs., Inc., 975 F.3d 416, 434 (4th Cir. 1996).

This Court's analysis of Count V begins, and ends, with addressing whether Defendants' alleged conduct resulted in a

violation of Plaintiff's constitutional rights. As McClanahan correctly notes, "[t]o prove a conspiracy under § 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Ritchie v. Jackson, 98 F.3d 1335 (4th Cir. 1996). Such constitutional deprivation is required because "not every wrong committed by a state actor provides grounds for a § 1983 action." Bush, No. Civ. A. 98-0994, 1999 WL 554585, at *4. Most notably, "conspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation." Id. Rather, it only "provides a basis for a § 1983 action [] if it results in some constitutional harm to the plaintiff." Id. Of course, the absence of a constitutional violation does not equate to the absence of a state tort claim.

Here, in line with the Court's ruling above in Part III. C., there is no constitutional right to an accurate police report. Moreover, while there is a constitutional right to access the courts, Plaintiff was not deprived of such right since: (1) an inadmissible accident report could not prevent an individual from bringing a civil action; and (2) Plaintiff is presently litigating a personal injury suit against the at-fault driver in Virginia state court. Accordingly, because an actionable conspiracy claim cannot stand "[i]n the absence of an underlying constitutional

violation," Plaintiff's conspiracy claim must fail. For these reasons, Defendants' motions to dismiss Count V are **GRANTED**.[9]

### F. Counts VI & VII – Intentional Infliction of Emotional Distress

Plaintiff asserts two final causes of action that allege intentional infliction of emotional distress ("IIED") under Virginia state law. Plaintiff's sixth cause of action alleges that McClanahan's false testimony in the underlying trespassing case caused Plaintiff great physical and emotional distress. ECF No. 48 ¶ 47-53. Plaintiff's seventh cause of action claims that the actions of McClanahan, Stone, Mitchell, and VanFaussien at the scene of the accident were "intentional and designed to inflict as much emotional distress and trauma on [Plaintiff] as possible."

---

[9] The Court notes that, notwithstanding the lack of a constitutional deprivation, it is a close call as to whether Plaintiff adequately alleged that Defendants entered into an agreement. Notably, while a plaintiff "need not produce direct evidence of a meeting of the minds, [a plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421. As such, "courts have . . . required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." Gooden v. Howard Cnty., Md., 954 F.2d 969-70 (4th Cir. 1992). Here, among other things, Plaintiff's Second Amended Complaint alleges that: (1) by way of VanFaussien's comments, the remaining Defendants became aware of Plaintiff's identity and his history with McClanahan; (2) there were eyewitnesses at the scene, along with clear indications of a "high impact accident" resulting from alcohol use; (3) a police report was written with facts grossly divergent from facts gathered at the scene; and (4) Mitchell, in a supervisory position, ratified or approved the allegedly falsified report that "deflected blame" from the at-fault driver. ECF No. 48 ¶¶ 15-17. Accordingly, Plaintiff's allegations appear sufficient to support the inference that at least two defendants, acting together, retaliated against him due to his actions in the underlying trespassing case. Though this element appears satisfied, the lack of a constitutional deprivation is fatal to Plaintiff's claim.

Id. ¶ 55.   Defendants, in their respective motions, argue that Plaintiff's IIED claims should be dismissed because Plaintiff has not met the pleading standard for IIED claims under Virginia law. See ECF No. 55, at 12-13; ECF No. 36, at 5-6.

> Pursuant to 28 U.S.C. § 1367(c)(3), a district court may:
>
> ". . . decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C.A. § 1367.   The Fourth Circuit has further clarified that "[a]lthough a federal court has discretion to assert [supplemental] jurisdiction over state claims even when no federal claims remain, '. . . if the federal claims are dismissed before trial. . . the state claims should be dismissed' without prejudice." Alexandria Resident Council, Inc., v. Alexandria Redev. & Hous. Auth., 11 F. App'x 283, 287 (4th Cir. 2001) (internal citations and alteration omitted) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)); see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("A court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'") (citations omitted).   The preference for remand exists because "[w]hen all federal claims are dismissed early in the litigation, the justifications behind [supplemental]

30

jurisdiction—considerations of judicial economy, convenience and fairness to litigants'—are typically absent." <u>Alexandria Resident Council, Inc.</u>, 11 F. App'x at 287 (quoting <u>Gibbs</u>, 383 U.S. at 726).

Here, having dismissed all of Plaintiff's federal claims at an early stage of this litigation and recognizing that the sole remaining pendent state law claims have no relation or bearing to federal law, the Court declines to exercise its jurisdiction over such claims.[10]  28 U.S.C. § 1367(c)(3).  Accordingly, Count VI and Count VII are **DISMISSED without prejudice** to Plaintiff's right to pursue relief in Virginia state court.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motions to dismiss Counts I-V of Plaintiff's Second Amended

---

[10] The Court further notes that dismissal without prejudice is especially warranted here because it is not immediately apparent to the Court that Plaintiff's IIED claims fail as a matter of law.  Though the parties dispute the applicable pleading standard in federal court for Virginia IIED claims, under the "laxer standards of pleading" that this Court would be governed by at this stage, it is not immediately clear that Plaintiff has failed to plausibly allege sufficiently egregious conduct at the scene of the accident or sufficiently serious physical and emotional damages stemming therefrom. <u>Daniczek v. Spencer</u>, 156 F. Supp. 3d 739 (E.D. Va. 2016) (relying on <u>Hatfill v. New York Times Co.</u>, 416 F.3d 320, 337 (4th Cir. 2005) and finding that even though Virginia courts apply a heightened pleading standard with respect to the type of emotional and physical harm suffered in support of an IIED claim, in federal court, the broadly applicable notice pleading/plausibility standard set forth in Rule 8 and <u>Twombly</u> applies to an IIED claim, to include facts regarding the emotional and physical harm suffered).  These issues, however, present close questions of state law, which are best resolved in state court.

Complaint, ECF Nos. 49, 54, and **DISMISSES without prejudice** Counts VI and VII of the Second Amended Complaint.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 13 , 2023