IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

BRANDON WILLIAMS

          Plaintiff,                 CASE NO. 2:22cv388

v.

CITY OF NORFOLK, et al.

          Defendants.


**BRIEF IN SUPPORT OF DEFENDANT STONE'S
AND VANFAUSSIEN'S MOTION FOR SUMMARY JUDGMENT**

      COME NOW the defendants, Sergeant R. VanFaussien and Officer Steve Stone, by counsel, and for their Brief in Support of their Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure state as follows:

**Preliminary Statement**

      Plaintiff, a resident of the Commonwealth of Virginia, brings this action against the City of Norfolk and several police officers claiming myriad violations of state and federal law. In essence, based upon these defendants' review of the Amended Complaint dated September 22, 2022, it appears that Counts II (Retaliation), Count V (Conspiracy), and Count VII (Intentional Infliction of Emotional Distress) are the only remaining as to all defendants.

      In essence, plaintiff contends that he had two interactions with Norfolk Police. The first surrounded a charge of trespassing when plaintiff was at a park after hours during January 2020. Plaintiff was convicted of trespassing and appealed to the Norfolk Circuit Court where the charge was ultimately dismissed on September 15, 2020. These

defendants were not involved in that encounter or those proceedings in any fashion.

On September 30, 2020, plaintiff was involved in an accident with another driver, Rex Aman where police were summoned to investigate. Plaintiff claims a conspiracy among the defendants to violate his constitutional rights in retaliation for plaintiff's alleged comments about Officer McClanahan's truthfulness. Plaintiff also asserts that he suffered intentional infliction of emotional distress.

Importantly, the record evidence in this case is devoid of any evidence that would support claim against these defendants.

## Statement of Undisputed Material Facts

In obedience with Local Rule 56(b) of the United States District Court for the Eastern District of Virginia, this defendant propounds the following listing of undisputed material facts based upon the Supreme Court's holding in *Scott v. Harris, infra*:

1.      On January 8, 2020, John D. McClanahan was employed as a police officer for the City of Norfolk. Exhibit 1 - McClanahan Declaration ¶ 2, attach to his Brief in Support of his Motion for Summary Judgment, Docket No. 101, July 24, 2025 (hereinafter "Exhibit 1").

2.      On that date at approximately 11:11 p.m., he issued and presented a summons to Brandon Williams for trespassing, Norfolk City Code 29-48, in a city park at or near 700 East Ocean View Avenue after sundown where signs were posted. Mr. Williams was in an automobile parked in the park's parking lot. Exhibit 1- ¶ 3.

3.      On February 14, 2020, Mr. Williams was found guilty as charged in Norfolk General District Court. Exhibit 1- ¶ 4.

4.      Mr. Williams made an audio recording of a portion of his encounter with Officer McClanahan in the city park when Officer McClanahan issued the summons for trespassing. Williams Dep. at 20.

5.      Officer McClanahan has not heard the audio recording made by Mr. Williams on January 8, 2020, nor seen a transcript of the recording, and was unaware that Mr. Williams was recording during his encounter with him in the city park. Exhibit 1- ¶ 5.

6.      Mr. Williams appealed the Norfolk General District Court trespassing conviction to Norfolk Circuit Court. Williams Dep. at 49.

7.      Officer McClanahan did not appear in Norfolk Circuit Court for trial of Mr. Williams' appeal of his February 14, 2020, Norfolk General District Court trespassing conviction. Exhibit 1- ¶ 6.

8.      Norfolk Assistant City Attorney Kristopher McClellan represented the City for Mr. Williams' appeal and appeared in Norfolk Circuit Court for trial on September 15, 2020, and made motions in court prior to trial for a continuance of the trial or to nolle prosequi the trespassing charge. The judge did not grant either motion, and dismissed the charge. McClellan Dep. at 10-11.

9.      The appeal was dismissed because the officer who had written the charge, McClanahan, did not appear in court for the trial date and Assistant City Attorney McClellan's request to continue the trial was denied. McClellan Dep. at 11.

10.     Steven Stone was a Norfolk Police Officer for six years before becoming a Conservation Officer for the Virginia Department of Wildlife Resources.  Stone Dep. at 4-5.

11.     Stone was a Norfolk Police on September 30, 2022.  Stone Dep. at 4.

12.     Stone was assigned to a specialized unit on September 30, 2022, not a general patrol unit.  Stone Dep. at 5-6.

13.     Rodney VanFaussien was a Norfolk Police Officer until he retired in 2023. VanFaussien Dep. at 4-5.

14.     VanFaussien was a patrol Sergeant on September 30, 2020. VanFaussien Dep. at 5.

15.     Stone reported to the scene of the accident because he was close by with other officers.  Stone Dep. at 5-6.

16.     When he arrived at the scene, Stone did not know Brandon Williams. Stone Dep. at 11.

17.     Stone had a Body Worn Camera that took footage of his involvement at the scene.  *See* Exhibit 2.

18.     Officer Martin also responded to the scene had body camera footage attached hereto as Exhibit 3.

19.     Stone and his partner were the first responding officers.  Stone Dep. at 6.

20.     Stone conducted the investigation of the crash with other officers and completed the Police Crash Report, FR300P.  Stone Dep. at 6, Police Crash Report, Exhibit 4.

21.     Stone was unable to come to a definite conclusion surrounding Aman's speed.  Stone Dep. at 7.

22.     Aman had told Stone he was traveling at 45 mph.  Stone Dep. at 8.

23.     Stone got very close to Aman and could not detect any indicia of intoxication.  Stone Dep. at 26.

24.     While a blood alcohol test was done at the hopspital on Aman, Stone had not received it as part of the investigation and had no basis to obtain it without a warrant.  Stone Dep. at 26.

25.     Based upon the damage at the scene, the maneuvering of his vehicle, and the statements Aman made to Stone, he charged him with reckless driving. Stone Dep. at 18-19.

26.     As part of the investigation, Officer Martin had relayed to Stone that a witness reported Aman as traveling at roughly 70-75 mph.  Stone Dep. at 8-9.

27.     Because of conflicting evidence, Stone listed 35 mph because he was confident that Aman was traveling at least that speed.  Stone Dep. at 9.

28.     While Stone likely had words with McClanahan at the scene, he does not recall them.  Stone Dep. at 10.

29.     VanFaussien reported to the scene of Mr. Williams's and Mr. Aman's accident as a supervisor in charge of managing the scene, and he did not participate in the investigation of the accident.  VanFaussien Dep. at 5, Stone Dep. at 11.

30.     After discussing a reference to Williams having a family member connected with the Hampton Police Division, VanFassien made the statement "This is the guy that gave McClanahan a ration of shit."  VanFaussien Dep. at 5-6; Exhibit 3 Martin Video at 32:35 Time.

31.     Stone does not know what VanFaussien was referring to in his statement recorded on Officer Martin's body worn camera that "[T]his is the guy that gave McClanahan a ration of shit." Stone Dep. at 12-14, 21.

32.     Stone first spoke with McClanahan concerning years after the event when

the lawsuit came about his interaction with Williams.  Stone Dep. at 21.

33.     VanFaussien believed that there was an internal affairs complaint because he was told at the scene at the scene from another officer that McClanahan was involved with Williams. VanFaussien Dep. at 5-7.

34      VanFaussien made that statement in an effort to give officers at the scene that he believed Mr. Williams had made an internal affairs complaint regarding some interaction with defendant McClanahan.  It was important to VanFaussien to make sure that body camera footage is preserved in the event that officers dealt with Mr. Williams. VanFaussien Dep. at 6, 10.

35.     VanFaussien wanted there to be a video record in the event there was an erroneous complaint or a legitimate complaint concerning an officer.  VanFaussien Dep. at 10.

36.     VanFaussien used his body camera at the scene of the accident, but because he only interacted with police at the scene, the procedure for preservation of footage only applied where officers were interacting with subjects of the investigation. VanFaussien Dep. at 10-11.

37.     At no point did VanFaussien or Stone enter into an agreement to harm Mr. Williams.  VanFaussien Dep. at 13, Stone Dep. at 27-29.

38.     At no point did VanFaussien or Stone take any action to harm Mr. Williams.  VanFaussien Dep. at 13, Stone Dep. at 27-29.

39.     At no point did VanFaussien do anything to prevent Mr. Williams from pursuing his claim against Mr. Aman.  VanFaussien Dep. at 13-14.

40      Stone did not state anything in Police Crash Report that would suggest

6

Williams was at fault for the accident.  Stone Dep. at 28.

41     Stone did not intend to make any factual errors on the crash report.

Stone Dep. at 28-29.

## **Standard of Review**

The standard for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure is well established.  Specifically, the Court may award summary judgment when

"the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of any material fact and that

the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see*

*Dawson v. Leewood Nursing Home, Inc.* 14 F.Supp. 2d 828, 830, (E.D.Va. 1998) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 LEd2d 265 (1986);

*Evans v. Technologies Applications and Serv. Co.,* 80 F.3d 954, 958 (4th Cir. 1996).  Once

a defendant's "Motion for Summary Judgment is properly made and supported, the

opposing party has the burden of showing that a genuine dispute exists."  *Norloff v.*

*Virginia*, 51 F.Supp. 2d 699, 702 (E.D.Va. 1998) (citing *Matsushita Elect. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 LEd2d 538 (1986).  "The

mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91

LEd2d 202 (1986).  Of course, "the evidence of the nonmovant is to be believed, and all

justifiable inferences are to be drawn in his favor," when performing the examination of the

record to determine whether, in fact, the genuine issue of material fact exists.  *Id*. at 255,

106 S.Ct. at 2513-14; *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Terry's Floor Fashions, Inc. v. Spurlington Indust., Inc.*, 763 F.2d 604, 610 (4th Cir. 1985).

Thereafter, the nonmoving party must set forth specific facts to show genuine issues for trial. *See Celotex* 477 U.S. at 324. The non-moving party may not, however, manufacture a genuine issue of material fact "through mere speculation or the building of one inference upon another." *Adams v. Drew*, 906 F.Supp. 1050, 1053 (E.D.Va. 1995)(citing *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256,1260 (4th Cir. 1993).

The deference accorded to assertions by the non-moving party is not without limitation. The Supreme Court addressed this issue in its decision in the case of *Scott v. Harris*, 550 U.S. 372 (2007), wherein the burden upon a party opposing a properly supported motion for summary judgment was refined. In that case, the plaintiff was severely injured when police employed a precision intervention technique to end what was alleged by the police to be a high speed pursuit. *Id*. The version of events described by the plaintiff in that case and adopted by the Court of Appeals based upon his submission read more as if the fleeing suspect had been "attempting to pass his driving test" rather than elude capture. *Id*. The Supreme Court disregarded the version of events offered by plaintiff and adopted by the Court of Appeals in that case where it was inconsistent with record evidence in the case, namely a videotape of the pursuit in question that contradicted substantial elements of plaintiff's claims. *Id*. In reaching its decision to disregard the portions of plaintiff's assertions the Court reasoned "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

**Argument**

I.    The retaliation claim in this action fails as a matter of law and is not supported by record evidence.

It is beyond dispute that retaliation against a person who exercises his or her constitutional rights is actionable under § 1983. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), *American Civil Liberties Union of Maryland v. Wicomico County*, *Md.,* 999 F.2d 780, 785 (4th Cir. 1993). In order to state a claim under §1983 based on allegations of retaliation, a plaintiff must show that he or she actually "suffered some adversity in response to [the] exercise of protected rights." *American Civil Liberties Union of Maryland*, 999 F.2d 785 (citing *Huang v. Board of Governors of the University of North Carolina*, 902 F.2d 1134, 1140 (4th Cir. 1990)). Importantly, however, "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Id*.

Williams contends that he was retaliated against for the exercise of his First Amendment and Sixth Amendment rights. To recover for such retaliation Williams must prove that (1) he engaged in protected activity, (2) the defendant took some action that adversely affected his constitutional rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *See Williams v. Mitchell*, 122 F.4th 85, 89 (4th Cir. 2024) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000); *McFadden v. Lewis*, 517 F. App'x 149, 150 (4th Cir. 2013)) *see also American Civil*

*Liberties Union of Maryland, Md,* 999 F.2d at 685. On remand of this action, the Court of Appeals explained that "[t]he adverse action here is not the mere misrepresentation of facts on an accident report . . . [i]t is the officers' intentional misrepresentation—the falsity of the report plus the animus motivating it" that satisfies the second prong of the retaliation test. *Williams*, 122 F.4th at 90. The existence of a causal relationship requires a plaintiff to show "at the very least[] that the defendant was aware of [plaintiff's] engaging in protected activity," and "some degree of temporal proximity." *Williams,* 122 F.4th at 89. (Citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).

Protected Activity and Casual Relationship

For the First Amendment retaliation claim based on making an audio recording of the encounter with Officer McClanahan in the city park, only the first element of proof is present. Williams recorded part of his interaction with McClanahan in the park on January 8, 2020, which is the exercise of protected First Amendment activity. "Creating and disseminating information is protected speech under the First Amendment," including "[r]ecording police encounters." *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 680-81 (4th Cir. 2023). But McClanahan did not know Williams made an audio recording and therefore could not have retaliated against him for doing so. Exhibit 1 ¶5 to McClanahan Brief in Support of Motion for Summary Judgment, Docket No. 101 (July 24, 2025).

The first element of his Sixth Amendment retaliation claim suffers the same fate because Williams alleges he exercised his Sixth Amendment rights "[b]y insisting on a trial of the trespassing charge and by challenging the testimony of McClanahan. Second

Amended Complaint ¶32. Although Williams appealed his Norfolk General District Court conviction to Norfolk Circuit Court for a trial there, he did not challenge McClanahan's testimony in Norfolk Circuit Court because McClanahan did not appear and testify, and the charge was dismissed without the presentation of evidence. And because no evidence was presented, he did not show or present evidence that McClanahan lied in the general district court. No evidence of McClanahan lying was "even brought forward." Second Amended Complaint ¶26. Williams did not file a motion or other pleading addressing McClanahan's testimony. So, contrary to the allegation in the Second Amended Complaint, Williams did not engage in protected activity by challenging McClanahan's testimony on appeal in Norfolk Circuit Court.

Since McClanahan did not know what was done in both of these instances, there is no evidence to support an argument that these defendants knew any more than he did. While VanFaussien stated that Williams had given McClanahan a "ration of sh**" after hearing on the day of the incident that Williams had made an internal, this generalized and vague statement is not enough at summary judgment to support the weight of the inferences Williams attempts to strap to it. Plaintiff can offer no specific evidence that would refute VanFaussien's statement that he was attempting to make certain that appropriate notice was given to officers at the scene to ensure the preservation of body camera footage, which in fact occurred as evidenced by the maintenance of footage from officers that interacted with Aman and Williams. Stone was not aware of the details of McClanahan's interactions with Williams until the instant action was filed. In light of the lack of notice to Stone and VanFaussien that Williams was engaged in a protected activity, the claims fail.

<u>Adverse Effect</u>

As to the second prong of the retaliation claim, Williams has failed to prove any meaningfully adverse effect to his rights. Plaintiff states these defendants acted to prevent him from bringing a claim against Aman and to minimize and deflect blame from him. *See* Second Amended Complaint at ¶¶33-35. As discussed above, the remanding opinion states that the officers' "intentional misrepresentation—the falsity of the report plus the animus motivating it" that make out the adverse effect element of the retaliation claim. The claims against VanFaussien and Stone will be addressed separately.

Here, the record contains no misrepresentation of any kind by VanFaussien, whether intentional or otherwise. Quite literally, all his is alleged to have done is have said that Williams gave McClanahan a ration of sh**. That statement does not constitute a misrepresentation of any kind. The undisputed basis for that statement, an admittedly inarticulate warning to officers to preserve body camera footage and mind themselves, is not contradicted by any other admissible record evidence.

With respect to Stone, the only statement was that he is alleged to have made on the Police Crash Report that is of moment is the single reference to Aman's speed being 35 mph before the accident. Important in this analysis is the context of the case as "Context matters," since "the significance of any given act of retaliation will often depend upon the particular circumstances." *Williams,* 122 F.4th at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69(2006)). Aman had admitted to traveling 45mph to Stone and another witness had given an estimate of Aman traveling at a high rate of speed. All of these exchanges of information are contained on the Body Worn Camera footage of Stone's interactions with Aman and VanFaussien. *See* Exhibit 2, Stone BWC

Footage.  Rather than make things difficult for plaintiff, taken as a whole the record of Stone's actions reveals a good faith effort to report the accident as he saw it.  No blame was attempted to be assigned to Williams for the accident and no excuses were made for Aman causing the accident.  Aman was cited for reckless driving which was the most appropriate charge based upon the evidence before Stone, particularly where there was a dispute between the speed alleged by Aman and the other witness.  Stone's explanation of why he cited Aman's speed as 35 mph and not 45 mph, as admitted, was a simple error. Stone Dep. at 30.  There is no record evidence that it was intentionally done and there is no evidence that it was based upon a retaliatory animus.

As argued on the motion to dismiss, Williams litigated the claim against Aman which he contends was prejudiced by the alleged actions of the defendants to a lucrative settlement.  Williams cannot and has not identified any admissible evidence that would support any adverse effect on his litigation efforts.  Also, as noted previously in the motion to dismiss briefing, the Police Crash Report is not admissible.  There is simply no materially adverse consequence to the plaintiff in this case from which a retaliation claim can be pursued.  The accident report in this case does not raise an issue of constitutional moment since the accident report plaintiff claims has prejudiced him is not admissible as evidence in plaintiff's civil trial with Aman.  Va. Code Ann. § 46.2-379; *Acuar v. Letourneau*, 260 Va. 180 (2000).

II.  <u>The conspiracy claim in this matter is not supported by law or record evidence.</u>

Williams asserts in Count V of the Second Amended Complaint that these defendants are liable to him in some manner for an alleged conspiracy to deprive him of

his constitutional rights. The record evidence fails to present adequate adequate facts to support his claims. "[T]o state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state action and private parties." *Shooting Point, LLC., v. Cumming*, 243 F.Supp.2d 536, 537 (E.D.Va. 2003)(citing *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). A Complaint stating a §1983 conspiracy claim must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in . . . deprivation of a constitutional right." *Id.*(quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) *cert denied* 510 U.S. 1240 (1994); *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999); *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000); *Hunt v. Bennent*, 17 F.3d 1263, 1268 (10th Cir.) *cert. denied* 513 U.S. 832 (1984).

Joint Action

Here, Williams's claim recites that defendants acted together to falsify the Police Crash Report of the September 30, 2022, accident to make it more difficult for him to recover and pursue a claim against Aman. The Second Amended Complaint and the record is devoid of any facts that can reasonably be read to support a meeting of the minds among the alleged co-conspirators sufficient to support a claim. Both VanFaussien and Stone deny having entered into any agreement to harm Williams or act against him. That alone is sufficient to end the inquiry unless Williams can demonstrate a genuine issue of fact. In light of this affirmative evidence, Williams "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*,

475 U.S. at 586-587 (citing *DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (2nd Cir. 1949) (L. Hand, J.), cert. denied, 338 U.S. 943 (1950); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (1983); Clark, *Special Problems in Drafting and Interpreting Procedural Codes and Rules*, 3 Vand. L. Rev. 493, 504-505 (1950). *Cf. Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944). Williams cannot produce any record evidence to support the existence of an agreement to act in concert among the defendants against Williams's interests or rights. There are no statements that were made that would support a finding of joint action or a meeting of the minds. That is particularly true where, as here the parties affirmatively deny such conduct. Rather, Williams necessarily relies on speculation and guesswork to strap inference upon inference to assert a conspiracy that simply does not exist.

Overt Act

Williams also cannot identify any overt act in furtherance of the conspiracy as required. While he alleges that the statements on the Police Crash Report were falsified by the defendants as to the speed of Aman, the record demonstrates that VanFaussien and McClanahan[1] had nothing to do with creating the report. As such, there is no basis for any alleged act made by them.

Any error made on the report was done by Stone, who explains that it was done innocently and without intent to do so. During the course of his investigation, Stone had been told by Aman he was traveling at 45 mph prior to the crash. On the Police Crash Report, Stone listed Aman's speed at 35 mph which was also the posted speed limit. To

---

[1] *See* McClanahan's Brief in Support of Summary Judgement, Docket No. 101, p.7 ¶20 (July 24, 2025).

be sure, this was a mistake over which Stone accepts responsibility.  Stone's attention was not focused on the speed issue because it was not the basis of a charge against Aman. Critically, there is nothing in the Police Crash Report that intimates that any responsibility for the accident rests with Williams.  The mere error alleged, in light of the factual explanation given by Stone compels the conclusion that an error on the Police Crash Report in this case was an unitentional one and as such cannot be an overt act.

Intracorporate Conspiracy Doctrine

The Second Amended Complaint alleges that the defendant police officers acted in the scope of their employment with the Norfolk Police Department, which is a department of the City of Norfolk, and that the city participated in and ratified the unconstitutional conduct alleged, which includes conspiracy under § 1983. Second Amended Complaint ¶¶18, 60-61. All the members of the alleged conspiracy were agents acting on behalf of the city. The city cannot conspire with itself. *Brady v. City of Myrtle Beach*, 137 F.4th 233, 241 (4th Cir. 2025) ("a corporation cannot conspire with its agents because the agents' acts are the corporation's own."). "Because the City cannot conspire with itself, there could be no conspiracy. This result reflects a sound principle of law. Public officials must often act in concert to carry out their duties, and treating such coordination as a 'conspiracy' would undermine the routine functioning of government." *Id* Accordingly, the conspiracy count also fails as an intracorporate conspiracy such as alleged here is not cognizable.

III.     These defendants are entitled to qualified immunity

Well settled precedent compels the conclusion that Stone and VanFaussien are entitled to qualified immunity from monetary damages and the burden of this suit for any

alleged violation of plaintiff's constitutional rights.  There is no longer any real dispute that public officials enjoy qualified immunity so long as their actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  *See also  Winfield v. Bass,* 106 F.3d 525 (4th Cir. 1997) (*en banc*).  In order to determine whether a specific government official enjoys qualified immunity, the federal courts must undertake three distinct determinations.  *See Pittman v. Nelms*, 87 F.3d 116, 118-19 (4th Cir. 1996); *see also Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring*)*.  First, the specific constitutional right which defendant officials allegedly violated must be identified.  *See id.*  Second, the reviewing court must determine whether the constitutional right was clearly established at the time of the official's actions.  *See id.*; *Anderson v. Creighton,* 483 U.S. 635 (1987).  Third, the Court must determine in light of the facts of each case whether a reasonable person in the official's position would have known that his conduct was unlawful.  *See id.*  Specifically, government officials are entitled to qualified immunity where they could reasonably believe that their conduct was lawful.  *Anderson,* 483 U.S. at 641.  Finally, an official's subjective intent is not relevant to the determination of whether or not he or she is entitled to qualified immunity.  *Id.*; *Graham v. Connor,* 490 U.S. 397 (1989).

Critically, the issue of whether the law was clearly established at the time of a defendant's conduct rests upon the state of the law at the time of the alleged violation.  The law is clearly established if "the contours of a right are sufficiently clear that every reasonable would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)(quoting *Anderson*, 483 U.S. at 640)(internal quotations

omitted).  To determine if a matter is clearly established, courts may look to decisions of the Supreme Court, the Court of Appeals for the applicable circuit, or the highest court of the state in which an action arose.  *West v. Murphy,* 771 F.3d 209, 213 (4th Cir. 2014)(citing *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) *vacated on other grounds*, 568 U.S. 1 (2012)).  In short, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Al-Kidd,* 563 U.S. at 741.

Important to understanding this element of immunity is the Fourth Circuit's decision in *Robles v. Prince George's Cnty., Maryland,* 302 F.3d 262 (4th Cir. 2002).  In that case, police officers handcuffed a suspect to a street sign in an adjacent jurisdiction to effect his arrest on a warrant in that jurisdiction and in finding that the conduct was unlawful but not clearly established, the Court stated:

> Going forward, officers are now on notice that the type of Keystone Kop activity that degrades those subject to detention and that lacks any conceivable law enforcement purpose implicates federal due process guarantees. Going backward, however, and imposing retrospective liability would eviscerate the requirement of notice at the core of the qualified immunity defense.

302 F.3d at 271.  That same analysis applies to the case at bar.

Here, for the reasons set forth in full in parts I and II, *supra*, there was no constitutional violation.  Additionally, there simply was no applicable decision of any court that would constitute controlling authority that a false statement on a Police Crash Report could  support a constitutional violation; thus, the matter was not clearly established.  That is, it was not clearly established until 2024 when the remaning opinion of the Court of Appeals was handed down.  *See Williams v. Mitchell*, 122 F.4th 85 (4th Cir. 2024).   A careful review of applicable Supreme Court, Court of Appeals for the Fourth Circuit, and

Supreme Court of Virginia authority fail to reveal any case with facts similar enough to those in the case at bar to provide any indication that an officer would face a constitutional claim for VanFaussien's and Stone's conduct in this case. VanFaussien took not adverse action against Williams in any way, and there is only a statement that Williams had given McClanahan a ration of sh**. Nor is there authority that would clearly establish that a factual error on a Police Crash report would constitute a violation of rights that would give Stone any indication that his actions may be unlwful. There simply is no case that places law enforcement on notice that such a statement would trigger a constitutional issue.

In fact, rather than it being clearly established, several cases stand for the proposition that such conduct was not a constitutional issue. *Griggs v. Lexington Police Dep't*, 672 F. Supp. 36, 38 (D. Mass. 1987), aff'd, 867 F.2d 605 (1st Cir. 1988) (deliberately filed false accident report which tended to defame plaintiff's reputation, assess her with blame for the accident, with intent to inflict emotional and physical distress did not rise to level of constitutional protection under § 1983); *Shock v. Tester*, 405 F.2d 852 (8th Cir. 1969) (false police accident report did not support § 1983 claim).

IV.   Williams cannot prove his intentional infliction of emotional distress claim

Plaintiff alleges the intentional infliction of emotional distress as a state tort claim. The record evidence in this case is insufficient to establish elements necessary to present a *prima facie* case. As such, this claim must be dismissed. Due to the fact that emotional harm is easily feigned, this cause of action is generally disfavored under Virginia law. *Ruth v. Fletcher*, 237 Va. 366, 373, 377 S.E.2d 412, 415 (1989); see also *Michael v. Sentara*

*Health System*, 939 F. Supp. 1220, 1233 (E.D. Va. 1996). Virginia law requires that a plaintiff plead and prove (1) intentional or reckless conduct by defendants, (2) outrageous or intolerable conduct, (3) a causal connection between the defendants' conduct and the claimed emotional distress, and (4) severe emotional distress. *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974); *Michael,* 939 F. Supp. at 1233. To satisfy the second element, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White,* 241 Va. 23, 27, 400 S.E.2d 160, 162. In addition, the severe emotional distress must be extreme and of a nature that "no reasonable person could be expected to endure it." *Harris v. Kreutzer*, 271 Va. 188, 205 (2006). Allegations of nervousness, inability to concentrate, sleeplessness, stress and its physical manifestations, and withdrawal from activities have all been held insufficient to support the severe emotional distress element under this cause of action. *Id.*

The evidence in this action fails to show any outrageous action taken by these defendants upon which a claim could be based. Instead, the Second Amended Complaint alleges at paragraphs 55 and 57 that defendants engaged in outrageous conduct to damage his claims. In other allegations, plaintiff states only that the Police Crash Report contained errors, principally that Aman was traveling at 35 mph at the time of the crash when he admitted he was traveling 45 mph and others had him going faster. He also notes that VanFaussien stated that he had "given a ration of sh**" to McClanahan. As to these defendants, that is all that is claimed in this case. These actions in and of themselves do

not constitute outrageous conduct sufficient to support this claim under Virginia law. None of this could possibly have affected Williams's ability to pursue his claims against Aman, and as revealed by the settlement obtained in this case by Williams did not do so. Likewise, both VanFaussien and Stone deny taking any actions against Williams.

Most importantly, however, the record does not contain and evidence that VanFaussien or Stone intentionally took any adverse action to Williams. The conduct alleged is simply a statement by VanFaussien that was intended to ensure continued police professionalism and an unintentional error related to speed listed on a Police Crash Report when the speed at issue was immaterial to the charge.

<u>Conclusion</u>

For these reasons, this matter should be dismissed, with prejudice.

RODNEY VANFAUSSIEN AND STEVEN STONE

By _____ /s/ _____
James A. Cales III, Esq. (VSB # 41317)
Counsel for Defendants VanFaussien and Stone
FURNISS, DAVIS, RASHKIND and SAUNDERS, P.C.
6160 Kempsville Circle, Suite 341B
Norfolk, VA 23502
(757) 461-7100
(757) 461-0083 (fax)
jcales@furnissdavis.com

CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Robert J. Haddad
Ruloff, Swain, Haddad, Morecock, Talbert and Woodward, PC
317 30th Street
Virginia Beach, Virginia 23452
rhaddad@srgslaw.com

*Counsel for Plaintiff*


Brian N. Casey, Esquire
Clarke, Dolph, Hull & Brunick, PLC
5712 Cleveland Street, Suite 130
Virginia Beach, VA 23462
bcasey@clarkedolph.com

*Counsel for Defendant McClanahan*


_____ /s/ _____
James A. Cales III, Esq. (VSB # 41317)
Counsel for Defendants VanFaussien and Stone
FURNISS, DAVIS, RASHKIND and SAUNDERS, P.C.
6160 Kempsville Circle, Suite 341B
Norfolk, VA 23502
(757) 461-7100
(757) 461-0083 (fax)
jcales@furnissdavis.com